IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| SHAMEKA ALSOBROOK, | : | |
| | : | CIVIL ACTION FILE |
| Plaintiff, | : | NO.: |
| | : | |
| vs. | : | |
| | : | JURY TRIAL DEMANDED |
| CITY OF ATLANTA, GEORGIA; | : | |
| TODD EDWARDS; JEROME WRIGHT: | | |
| | : | |
| Defendants. | : | |

## COMPLAINT

### NATURE AND PURPOSE

1.

This action is for gender discrimination and retaliation in public employment in violation of 42 U.S.C. 2000e, et seq. and the Fourteenth Amendment to the U.S. Constitution.

### JURISDICTION AND VENUE

2.

This Court has jurisdiction of this matter, inter alia, pursuant to 28 U.S.C. §§1331, 1343 and the doctrine of supplemental jurisdiction. The unlawful employment practices alleged herein occurred within the geographic area

encompassed by the Atlanta Division of the Northern District of Georgia. Thus, under 28 U.S.C. §§ 90(a), 1391(b) & 1393(a), the Atlanta Division of the United States District Court for the Northern District of Georgia is a proper venue for this suit.

## PARTIES

1.

Plaintiff Shameka Alsobrook is a female citizen and resident of the State of Georgia and is entitled to bring actions of this kind and nature.

2.

The Defendant CITY OF ATLANTA (the "City") is a duly incorporated municipality located primarily in Fulton County, State of Georgia. The City is subject to the jurisdiction of this court, and may be served with this Complaint and Summons in accordance with O.C.G.A. § 9-11-4, through service on the Mayor, Kasim Reed, at 55 Trinity Avenue, Atlanta, Georgia 30303.

3.

Todd Edwards was, at the time period relevant to this case, was Assistant Chief of Technical Services. Mr. Edwards is currently employed as a Captain at a Fire Station and may be served at his place of his employment through personal service.

4.

Jerome Wright was, at the time period relevant to this claim, was a Captain with the City of Atlanta Fire Department who had authority over Plaintiff in her capacity as a recruit.

**FACTUAL ALLEGATIONS GIVING RISE TO PLAINTIFF'S CLAIM**

5.

Plaintiff was enrolled as a recruit in the Atlanta Fire Department on January 29, 2015

6.

Throughout her training, Plaintiff was subjected to numerous derogatory statements regarding her gender

7.

Plaintiff was told by several supervisory personnel that she should not be a firefighter because she is a woman.

8.

Lt. Dane Clark told Plaintiff from the beginning of the Fire side training (in February) that he was holding Plaintiff to a higher standard because she is a woman.

9.

Lt. Anderson told Plaintiff in or around March or April, 2015 (shortly before

an accident that led to him being reassigned) that Plaintiff didn't have to be a firefighter, that it is a man's job, that Plaintiff was so pretty, and asked why would she want to be a firefighter, since he was sure Plaintiff's husband would "let" her do something else.

10.

Lt. Anderson spent about an hour and a half trying to convince Plaintiff not to be a firefighter, simply because she is a woman.

11.

During the training, sometime in or around June of 2015, several of the Chiefs, including Assistant Chief Todd Edwards and others, came to a day of training, which was out of the ordinary.

12.

Assistant Chief Edwards expressed surprise that a woman (Plaintiff) was able to accomplish the tasks and complete the drills. He did not respond to any other recruit in this way.

13.

On September 22, 2015, Plaintiff was in Captain Jerome Wright's office at his request.

14.

Captain Wright told Plaintiff that he wanted Plaintiff to bring in paperwork showing that she had an appointment for Wills for Heros.

15.

During this meeting, he began talking about Plaintiff's hair.

16.

Captain Wright stated "Firefighting is a job for men and our hair is low, so we don't have a problem with it."

17.

Captain Wright said that the recruit handbook required Plaintiff to have her hair in a pony tail.

18.

Plaintiff respectfully disagreed and, together, they checked the handbook.

19.

Captain Wright said, "You're right, it is unclear, I'll need to talk to Chief Stidwell about it."

20.

The following day, September 23, 2015, Captain Wright issued demerits to Plaintiff for not having her hair in a pony tail, despite knowing that the handbook did not require it.

21.

Plaintiff appealed and during the course of her appeal, informed Training Section Chief Monterio Stidwell that she believed she was being discriminated because she is a woman.

22.

Plaintiff informed Mr. Stidwell of Captain Wright's sexist statements that firefighting is a job for men.

23.

On September 28, 2015, Kinan Humphrey was pulled into Captain Wright's office, where he remained for about two hours.

24.

On September 29, Plaintiff was pulled out of the class and taken to the front Academy office

25.

Plaintiff was informed by a recruit that Captain Wright had asked all of the other recruits, while they were in class, to write statements about whether they had ever heard a recruit making allegations of an improper relationship with the Fire Chief.

26.

He said that all of them were asked to write statements and the questions – essentially who, where, when, and what was said – were written on the chalkboard in the classroom.

27.

Each member of the class was required to write a statement.

28.

In the afternoon, Plaintiff was asked to come into Chief Stidwell's office and write a statement as to whether Plaintiff had ever said anything about her Mom having had had sex with the Fire Chief.

29.

Plaintiff denied making any such statement.  Plaintiff later learned that the vast majority of the recruits also denied hearing any such statement and, according to the investigative file, only two recruits – including recruit Humphreys – claimed to have heard Plaintiff allege that her mother was having sex with the Fire Chief.

30.

Defendant did not tell Plaintiff prior to her termination who had made these accusations, so that it was impossible for her to state whether these individuals had a motive to lie about her.

31.

Defendant's investigation states that none of the individuals making these statements had any animosity toward Plaintiff.

32.

However, in the second statement taken from Mr. Humphreys, he admitted that he made the statement because he was angry at Plaintiff and that the statement he attributed to Plaintiff had allegedly been made several months earlier.

33.

Plaintiff learned from reviewing the same investigation that the other recruit who made such a statement, Martan Dye, had been trying to have sex with her (despite the fact that he was married) and Plaintiff's classmates had told Plaintiff that he was "obsessed" with her.

34.

Had Plaintiff been informed of the names of the identities of the two accusers (out of more than twenty who denied that she had engaged in such conduct), she could have provided information as to their motivation, but she was denied that opportunity.

35.

Because of the discrepancies in Humphries statements and the overwhelming number of recruits who said Plaintiff had not made any such statements, Training

Captain Stidwell found that Plaintiff had not engaged in the conduct alleged and found in her favor

36.

He was then overruled by Assistant Chief Edwards, who then supposedly reinterviewed only the recruits claiming Plaintiff had made the statements in question.

37.

The records of the investigation do not contain statements of the recruits who exonerated Plaintiff.

38.

Assistant Chief Edwards interviewed Plaintiff and she adamantly denied she had done what she was accused of doing.

39.

Plaintiff was terminated for false and pretextual reasons on or about October 1, 2015.

40.

Training Section Chief Stidwell was later terminated, which, on information and belief, was because he objected to my termination, felt that it was illegal discrimination and disagreed with Assistant Chief Edwards' handling of the matter.

## COUNT ONE:

## SEX DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

3.

The preceding paragraphs One through Forty of this Complaint are incorporated by this reference.

4.

Defendant Atlanta was, at all times relevant to this action, Plaintiff's employer.

5.

Defendant Atlanta discriminated against Plaintiff with respect to terms and conditions of employment by permitting her to be subjected to harassment and discrimination on the basis of sex and by terminating such employment because of her sex, female, in violation of Title VII of the Civil Rights Act of 1964.

6.

Defendant Atlanta's actions were willful, wanton and intentionally directed to harm the Plaintiff.

7.

Defendant Atlanta's actions were reckless and taken in willful disregard of the probable consequences of their actions.

8.

As a result of Defendant Atlanta's conduct, Plaintiff has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation and suffered mental and emotional distress.

9.

Defendant Atlanta's actions and failures to act were the proximate cause of the harm suffered by Plaintiff as alleged herein.

10.

All conditions precedent to bringing this Count have been completed, performed and/or waived.

**COUNT TWO:**

**RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

11.

The preceding paragraphs One through Fifteen of this Complaint are incorporated by this reference.

12.

Defendant Atlanta was, at all times relevant to this action, Plaintiff's employer.

13.

Defendant Atlanta discriminated against Plaintiff with respect to terms and conditions of employment by terminating her employment because of her opposition to harassment and discrimination on the basis of sex, female, in violation of Title VII of the Civil Rights Act of 1964.

14.

Defendant Atlanta's actions were willful, wanton and intentionally directed to harm the Plaintiff.

15.

Defendant Atlanta's actions were reckless and taken in willful disregard of the probable consequences of their actions.

16.

As a result of Defendant Atlanta's conduct, Plaintiff has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation and suffered mental and emotional distress.

17.

Defendant Atlanta's actions and failures to act were the proximate cause of the harm suffered by Plaintiff as alleged herein.

18.

All conditions precedent to bringing this Count have been completed, performed and/or waived.

**SEX DISCRIMINATION IN VIOLATION OF THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION PURSUANT TO 42 U.S.C. § 1983**

19.

The preceding paragraphs of this Complaint are incorporated by this reference.

20.

Defendants, acting under color of law and pursuant to the policy or custom or the City of Atlanta and/or acting through a final policy making official, discriminated against Ms. Alsobrook on the basis of sex by subjecting her to severe or pervasive harassment and by terminating her employment.

21.

The allegations set forth herein, taken as true, state a claim for a violation of the Equal Protection Clause of the Fourteenth Amendment, which rights are being enforced herein pursuant to 42 U.S.C. § 1983.

22.

Defendants' actions were willful, wanton and intentionally directed to harm the Plaintiff.

23.

Defendant Edward's actions were reckless and taken in willful disregard of the probable consequences of their actions, so as to give rise to a claim for punitive damages against Defendant Edwards.

24.

Defendant Wright's actions were reckless and taken in willful disregard of the probable consequences of their actions, so as to give rise to a claim for punitive damages against Defendant Wright.

25.

As a result of Defendants' conduct, Plaintiff has suffered loss of wages and benefits, loss of stature with respect to her position in the community, and has suffered damage to her professional reputation and suffered mental and emotional distress.

26.

Defendants actions and failures to act were the proximate cause of the harm suffered by Plaintiff as alleged herein.

27.

All conditions precedent to bringing this Count have been completed, performed and/or waived.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following specific and general relief:

a. That she receive full back pay with prejudgment interest and employee benefits, including applicable retirement benefits;

b. That all documents relating to Plaintiff's termination be expunged, destroyed, and never referenced again by Defendants, except as necessary to afford full and complete relief to Plaintiff;

c. That she receive compensatory damages for mental and emotional distress in an amount to be determined in the enlightened conscience of the jury;

d. That she receive punitive damages against Defendant Edwards for his willful and malicious violation of Plaintiff's federally protected rights;

e. That she receive punitive damages against Defendant Wright for his willful and malicious violation of Plaintiff's federally protected rights;

f.   That she receive nominal damages for the deprivation of her protected rights;

g.   That she receive attorneys' fees and expenses of litigation pursuant to 28 U.S.C. Section 1988, and Title VII;

h.   That she receive a trial by jury; and

i.   That she receives such other and further relief as the Court deems just and proper.

**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**

Respectfully submitted this day, October 11, 2017.

**ORR, BROWN & BILLIPS, LLP**

/s/ *Matthew C. Billips*
Matthew C. Billips
Georgia Bar No. 057110
s/ *Kristine Orr Brown*
Kristine Orr Brown
Georgia Bar No. 554630
P.O. Box 2944
Gainesville, GA 30503
(770) 534-1980 t
(770) 536-5910 f
mbillips@orrbrownandbillips.com

ATTORNEYS FOR PLAINTIFF